UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


NABOR MENDOZA,

              Petitioner,

vs.                                  Case No. 3:17-cv-332-J-39JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

              Respondents.

_____

**<u>ORDER</u>**

**I.  INTRODUCTION**

In his Petition for Writ of Habeas Corpus (Petition) (Doc. 1), Petitioner Nabor Mendoza challenges a Duval County judgment of conviction for two counts of sexual battery and one count of kidnaping with a weapon.  In ground one of the Petition, he raises multiple claims of ineffective assistance of trial counsel.  In ground two, he claims the trial court deprived of him of a fair trial and violated his constitutional rights when the court overruled a defense objection concerning a comment on Petitioner's right to be present at trial.  Finally, in ground three he raises a double jeopardy claim.

Respondents filed an Answer (Response) (Doc. 19).[1] Petitioner filed a Response to Respondents' Reply/Answer (Reply) (Doc. 20). <u>See</u> Order (Doc. 8).[2] In his Reply, Petitioner concedes the double jeopardy claim. Reply at 56. Therefore, the Court will not address ground three, the double jeopardy claim.

## II. EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004). As the record refutes the asserted factual allegations or otherwise precludes habeas relief, Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Petitioner has not met his burden demonstrating a need for an evidentiary hearing. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012).

---

[1] The Court hereinafter refers to the Exhibits (Doc. 19) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.

[2] The Court will refer to the Exhibits in Support of the Reply (Doc. 20) as "Petitioner's Exhibit" and provide the title of the document, where applicable.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." <u>Shoop v. Hill</u>, 139 S.Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." <u>Id</u>. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Virginia v. LeBlanc</u>, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may grant habeas relief:

> only when the adjudication of a federal constitutional claim "on the merits in State court proceedings" either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This narrow evaluation is highly deferential, for a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1146–47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131 S.Ct. 770,

178 L.Ed.2d 624 (2011)). The decision of a
state court is "contrary to" federal law only
if it "contradicts the United States Supreme
Court on a settled question of law or holds
differently than did that Court on a set of
materially indistinguishable facts." Cummings
v. Sec'y for Dep't of Corr., 588 F.3d 1331,
1355 (11th Cir. 2009) (citation and internal
quotation marks omitted). The decision of a
state court "involves an unreasonable
application of federal law if it identifies
the correct governing legal principle as
articulated by the United States Supreme
Court, but unreasonably applies that principle
to the facts of the petitioner's case,
unreasonably extends the principle to a new
context where it should not apply, or
unreasonably refuses to extend it to a new
context where it should apply." Id. (citation
and internal quotation marks omitted). "The
question ... is not whether a federal court
believes the state court's determination was
correct but whether that determination was
unreasonable—a substantially higher
threshold." Id. (citation and internal
quotation marks omitted).

Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d 1314, 1321 (11th

Cir. 2018).

A district court is charged with reviewing the conclusions of

the state court, deferring to the state court decisions, and

granting habeas relief only if the adjudication of the claim

resulted in a decision that was contrary to, or involved an

unreasonable application of Supreme Court precedent. "Clear error

will not suffice." Virginia v. LeBlanc, 137 S.Ct. at 1728. This

formidable barrier to habeas relief is very difficult to overcome

as highly deferential AEDPA deference is due, unless the petitioner

shows the state court's ruling was so lacking in justification that

there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. Thus, if some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 911 F.3d at 1351.

When reviewing a state court's decision, AEDPA deference is not based on the "specificity or thoroughness" of the decision; indeed, the "no-grading-papers, anti-flyspecking rule remains the law of the circuit." Meders, 911 F.3d at 1350. Consequently, a district court is not obliged to "flyspeck the state court order or grade it." Wilson v. Warden, Ga. Diagnostic Prison, 898 F.3d at 1345. Also, AEDPA deference is given even if no rationale or reasoning is provided. Meders, 911 F.3d at 1351 (citing Harrington v. Richter, 562 U.S. 86, 100 (2011)).

A district court should afford a presumption of correctness to state trial and appellate courts' factual determinations. Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013). Thusly, "the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." Morrow v. Warden, 886 F.3d 1138, 1147 (11th Cir. 2018), cert. denied, No. 18-6409, 2019 WL 659905 (U.S. Feb. 19, 2019).

The Supreme Court of the United States has imparted its wisdom in employing AEDPA review:

> "Deciding whether a state court's
> decision 'involved' an unreasonable
> application of federal law or 'was based on'
> an unreasonable determination of fact requires
> the federal habeas court to 'train its
> attention on the particular reasons—both legal
> and factual—why state courts rejected a state
> prisoner's federal claims.'" <u>Wilson v.
> Sellers</u>, --- U.S. ----, 138 S.Ct. 1188,
> 1191–92, --- L.Ed.2d ---- (2018) (quoting
> <u>Hittson v. Chatman</u>, --- U.S. ----, 135 S.Ct.
> 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg,
> J., concurring in denial of certiorari)). The
> Supreme Court recently held that, when the
> relevant state court decision is not
> accompanied by a reasoned opinion explaining
> why relief was denied, "the federal court
> should 'look through' the unexplained decision
> to the last related state-court decision that
> does provide a relevant rationale" and
> "presume that the unexplained decision adopted
> the same reasoning." <u>Id</u>. at 1192. "[T]he State
> may rebut the presumption by showing that the
> unexplained affirmance relied or most likely
> did rely on different grounds than the lower
> state court's decision." <u>Id</u>.

<u>Johnson v. Sec'y, Dep't of Corr.</u>, 737 F. App'x 438, 441 (11th Cir.

2018) (per curiam).

If the last state court to decide a federal claim provides an

explanation for its merits-based decision in a reasoned opinion,

the district court simply reviews the specific reasons given by the

state court and defers to those reasons, if they are reasonable.

But, if no explanation is provided, for example, the opinion simply

states affirmed or denied, the district court should "look through"

the unexplained decision to the last related state-court decision

that provides relevant rationale.  The district court presumes the

unexplained decision adopted the same reasoning as the lower court,

however, this presumption is not irrebutable, as strong evidence may refute it.  See Kernan v. Hinojosa, 136 S.Ct. 1603, 1606 (2016) (per curiam).  In an effort to rebut the presumption, the state may attempt to show the higher state court relied or most likely relied on different grounds than the lower state court, "such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018) (Wilson).

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises claims of ineffective assistance of counsel. To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).  See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either of the components).

"For a third of a century[,]" a counsel's performance has been considered deficient only if counsel's performance is outside the wide range of professionally competent assistance.  Meders, 911 F.3d at 1348.  In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense. In order to satisfy this prejudice prong, the reasonable

probability of a different result must be "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). Thus, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 982 (2005). As a result,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task."
<u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Ground One - Issue One

In Issue One, Petitioner raises a claim of the ineffective assistance of trial counsel for failure to properly cross examine witnesses in order to expose the many factual inaccuracies in the victim's statements.  Petition at 5.  Petitioner raised a comparable claim in his Rule 3.850 motion as issue one.  Ex. M at 2-3, 24-26.  The trial court denied relief, <u>id</u>. at 155-56, attaching the state's Response to Defendant's Motion for Post-Conviction Relief (state's response) as Exhibit A.  Ex. M at 157-72.  The court found the record refutes Petitioner's entitlement to relief and attached numerous documents supporting its holding.  Ex. M at 173-252.  The 1st DCA affirmed per curiam.  Ex. P at 1.

In the state's response, the state referenced the two-pronged <u>Strickland</u> standard of review for the claims of ineffective assistance of counsel.  Ex. M at 158-59.  In addressing this issue, the state described the actions of defense counsel at trial:

> In the instant case, relative to the victim, the defense attorney cross examined her regarding the fact she originally told the officer that the Defendant was driving a truck, but at trial, she testified that it was a van.  (Vol. II, 58).  The defense attorney also impeached the victim with her deposition.  (Vol. II, 59-60).  The attorney cross examined the victim about the fact that she had her phone with her during the sexual assault but did not call 911.  (Vol II, 60 and 62).  The attorney cross examined the victim about the

location of the gun at issue. (Vol. II, 60).
The attorney cross examined the victim about
the fact she originally told the police that
the Defendant was oriental or Asian and had a
Filipino accent. (Vol. II, 63). The attorney
also cross examined the victim on the fact she
originally told the nurse that she was unaware
of whether the Defendant ejaculated. (Vol II,
64). Regarding Mr. Giles, the attorney did
question him about the fact that he did not
observe any blood on the victim prior to the
examination at the hospital. (Vol. II, 72).

Ex. M at 160-61.

In the state's response, the state also emphasized that
impeachment took place and the defense attorney argued the
impeachment in closing argument, and although the impeachment may
have been different from that posed by Petitioner, Petitioner
failed to establish prejudice by counsel's choices. Id. at 161.
Significantly, at trial, defense counsel argued that reasonable
doubt comes from conflicts in the evidence, including the fact that
the victim told the police the assailant was driving a truck, the
victim told Mr. Giles the assailant was driving a small car, but at
trial, the victim said the assailant was driving a van. Id. The
defense attorney also pointed out numerous inconsistencies,
including information about the gun, statements concerning the
nationality of the assailant and the nature of his accent, and
statements concerning the initial approach of the assailant and
whether he ejaculated. Id. Defense counsel emphasized these
inconsistencies and the fact that the burden was on the state. Id.

In the state's response, the state noted there was no attack
of credibility of Mr. Giles because he did not testify he saw blood

on the victim until they were at the hospital, a matter consistent
with the uncontroverted evidence that the victim was actively
bleeding at the hospital and during the course of her examination.
Id. at 162.  Instead, the defense focused on the fact that vaginal
tearing is possible during consensual sex due to lack of
lubrication.  Id.  Importantly, Petitioner testified at trial that
the consensual sex was fast because the victim told Petitioner a
man was coming with a gun to pick her up.  Id.  The state opined:
"[a]lthough the Defendant evidently wanted his trial attorney to
impeach the victim and Mr. Giles more than what occurred, a
defendant is only entitled to a fair trial, not a perfect trial, as
there is no such thing as a perfect trial."  Id. (citations
omitted).

     As noted in the Response, the trial court adopted the state's
response and attached excerpts from the trial transcript to support
the court's decision.  Response at 16.  As for Petitioner's
contention that counsel's performance was deficient for failing to
attack the victim concerning her account of Petitioner raping her
vaginally immediately after ejaculating from fellatio, his
contention has no merit because the victim did not testify as to
immediacy at trial.  Ex. B at 43-45.  She simply attested
Petitioner ejaculated upon fellatio and after vaginally raping her.
Id.  Since Petitioner's DNA was found in the victim's vagina,
extensive cross examination concerning the timing or immediacy of
the ejaculation would not have been significant or beneficial to

the defense. Here, the defense was consensual sex, something Petitioner admitted to at trial.

The 1st DCA affirmed the decision of the trial court without opinion. Ex. P at 1. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The state court's decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, Issue One is due to be denied.

Alternatively, the court is not convinced defense counsel's performance fell below an objective standard of reasonableness by failing to impeach the witnesses in the manner suggested by Petitioner. Petitioner is not entitled to relief on this ground as he has not shown deficient performance. The cross examination was well within the scope of permissible performance. "The standard for effective assistance is reasonableness, not perfection." <u>Brewster</u>, 913 F.3d at 1056 (citations omitted). Petitioner has failed to establish that no competent counsel would have conducted the cross examination as counsel did in this trial. In light of Petitioner's failure to demonstrate deficient performance, this

Court need not address the prejudice prong.  $\underline{Id}$. at *6 (citation omitted).

Petitioner has failed to carry his burden of showing that counsel's representation fell outside the wide range of reasonably professional assistance.  Even assuming deficient performance by counsel, Petitioner has not shown resulting prejudice.  There is not a reasonable probability that the outcome of the case would have been different if trial counsel had taken the actions suggested by Petitioner.  Defense counsel's performance did not fall below an objective standard of reasonableness prejudicing the defense.  As such, Issue One is due to be denied.

### B.  Ground One - Issue Two

In Issue Two of the Petition, Petitioner claims counsel was ineffective for failure to conduct an investigation into the criminal background of the victim.  Petition at 7.  Petitioner faults defense counsel for failing to ask the victim whether she had been convicted of a felony.  $\underline{Id}$.

This ground has no merit.  On April 28, 2011, in preparation for trial, defense counsel took the deposition of the victim.  Ex. M at 118-40.  In the course of the deposition, counsel inquired about the victim's criminal history by pointedly asking her if she had ever been arrested for anything.  Ex. M at 122.  The victim responded in the negative.[3]  $\underline{Id}$.

---

[3]  It is important to recognize that the victim was only nineteen years old when the sexual assault occurred.  Petitioner's Exhibit J, General Offense/Incident Report dated March 7, 2005.

To the extent Petitioner is asserting counsel's performance was constitutionally deficient because counsel failed to conduct a further investigation into the victim's history, Petitioner has not established that no competent counsel would have taken the action that counsel did take. Again, counsel deposed the victim and asked her about her criminal history. Any failure to conduct a further investigation did not take counsel's performance outside the wide range of professionally competent assistance.

In the alternative, AEDPA deference is warranted. The trial court, adopting the state's response and attaching pertinent documents, denied post conviction relief. Ex. M at 155-252. The 1st DCA affirmed the decision of the trial court. Ex. P at 1. Pursuant to <u>Wilson</u>, this Court assumes the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

The adjudication of the state court, the 1st DCA, resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on Issue Two because the state court's decision was not contrary to clearly established federal law, <u>Strickland</u> and its progeny, did not involve an unreasonable application of clearly established federal

law, and was not based on an unreasonable determination of the facts.  Thus, Issue Two is due to be denied.

### C.  Ground One - Issue Three

In Issue Three, Petitioner claims his counsel was ineffective for failure to disclose favorable evidence to the jury.  Petition at 7.  Petitioner identifies this favorable evidence to be partial tag number "V29" and two individuals who were under investigation, Bruce Cochran and Elroy Mattie.  Id. at 7-8.  The victim provided the police with a partial tag number, which led the police to a painting company on East 8th Street.  Petitioner's Exhibit J, Supplemental Report dated March 7, 2005.  Bruce Cochran, a white male, had a white Dodge Ram with tag V29MBS.  Id.  There was also a black Dodge Ram with tag P-0051M and a tan Ford F 150 with tag W71LDP at Cochran Painting Company.  Id.  Elroy Mattie, an Hispanic male employee with the Cochran Painting Company, had no criminal history, and the victim did not pick Mr. Mattie out of a photo spread.  Id.

The March 18, 2005 Intelligence Bulletin, Bulletin Number 05-84, contained a sketch of the assailant and a description of an Asian male driving a tan Dodge Ram with burgandy lettering and Ram picture across the back window, and a partial tag number (questionable) containing V29.  Petitioner's Exhibit I, Intelligence Bulletin.  The March 7, 2005 General Offense/Incident Report referenced the tan Dodge Ram.  Petitioner's Exhibit J,

General Offense/Incident Report. The victim described the assailant as having pants covered with paint. Id.

Also of import, the victim provided a sex kit. In August 2008, "the Sex Crimes Unit received a letter from FDLE which stated that a search of the State of Florida DNA database indicated a match between evidence collected in the case and the suspect, Nabor Mendoza. The suspect had previously been arrested on an unrelated sex crime and was incarcerated in state prison." Petitioner's Exhibit J, September 16, 2010 Supplemental Report. Although the detective initially described Petitioner's ethnicity as Asian/Pacific Islander, after the detective interviewed Petitioner, the detective changed Petitioner's ethnicity descriptor to "Hispanic Origin." Petitioner's Exhibit J, August 26, 2010 Arrest and Booking Report; Petitioner's Exhibit L, Deposition of David Crews and Richard Giles at 18 (Petitioner told the detective he was born in Mexico, and the detective subsequently altered the descriptor of Petitioner's ethnicity in the report.).

With regard to any deficiency in counsel's performance, it is imperative to recognize that defense counsel was faced with certain irrefutable facts. Petitioner's DNA came back as a match. Petitioner's Exhibit J, December 16, 2010 Laboratory Report. Indeed, the foreign DNA profile obtained from the victim's vaginal swabs matched Petitioner's DNA profile. Id. Petitioner could not believably refute this fact; therefore, his sole defense became consensual sexual activity with the victim. This was sound

strategy in light of the state's strong evidence against Petitioner, including the DNA evidence, the victim selecting Petitioner out of a photo spread, and the victim identifying Petitioner in court. Ex. B at 55-57. Also of importance, the contemporaneous sketch produced by the police based on the description of the perpetrator by the victim was a remarkably accurate depiction of Petitioner.[4] Ex. A at 66.

Under these circumstances, it would have been illogical to attempt to blame the attack on a white male, Mr. Cochran, or on Mr. Mattie, someone the victim did not select from a photo spread as the perpetrator, and someone who had no criminal record.[5] As noted in the state's response, consensual sex was the logical defense, and Petitioner testified that the sex was consensual and fast because a man was picking up the victim, and the man carried a gun. Ex. M at 57. Petitioner testified at trial that he is from Mexico, he has four felony convictions, and the sex with the victim was consensual and fast because a man was coming to pick her up and the man had a gun and could hurt Petitioner. Ex. B at 179-80, 184.

The state urged the post conviction court to deny the claim of ineffective assistance of counsel because Petitioner failed to

---

[4] See Corrections Offender Network, Florida Department of Corrections, available at http://www.dc.state.fl.us/AppCommon/ (last visited February 14, 2019).

[5] Of import, Mr. Mattie, referenced by the police as "h/m, 9-20-53[,]" evidently is a much older person than Petitioner, who's birth date is 1966. Petitioner's Exhibit J, Supplemental Report. See footnote 4.

demonstrate a legal deficiency based on the defensive strategy chosen by counsel and Petitioner, and Petitioner failed to demonstrate prejudice in his attorney's failure to present evidence of other suspects in light of the defense theory of the case: consensual sex. Ex. M at 57-58. The record demonstrates trial counsel's actions were within the broad range of reasonably competent counsel under prevailing professional norms. It was not a plausible defense to try and blame the offense on others, essentially asking the jury to believe someone else did it, but if they did not, it was consensual sex between Petitioner and the victim. Under these circumstances, there is no reasonable probability that, if counsel has acted as Petitioner suggests, the result of the proceeding would have been different.

The 1st DCA affirmed the trial court's decision. Ex. P at 1. The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to relief on Issue Three.

### D.  Ground One - Issue Four

In Issue Four of the Petition, Petitioner claims his counsel was ineffective for failure to investigate whether the victim was using her cell phone during the time of the offense. Petition at 9. Petitioner states he asked counsel to subpoena the victim's

cell phone records to support Petitioner's defense that it was consensual sex and the victim was using her phone off and on during the course of their travels.  _Id_.

The record shows the following.  During cross examination, the victim admitted she had her cell phone with her.  Ex. B at 60.  She stated this fact again on re-direct examination.  _Id_. at 65.  She denied talking on her phone while she was with Petitioner.  _Id_. at 60.  Richard Giles, the individual who provided the victim with a ride to the hospital, said, when he came upon the victim, she was walking and crying hysterically.  _Id_. at 68.  The victim, who described herself as frantic and stressed out, did not call the police.  _Id_. at 48, 62.  Mr. Giles did.  _Id_. at 49.  At trial, Petitioner testified that the victim talked a lot on her phone while she was with him.  _Id_. at 182-83.

The March 7, 2005 Female Sexual Assault Exam report states the assailant kept the victim's panties and cell phone.  Petitioner's Exhibit O at 5.  The March 7, 2005 General Offense/Incident Report refers to the assailant keeping the victim's black panties, but no mention is made of the assailant keeping the phone.  Petitioner's Exhibit J at 3.

Defense counsel, through cross examination, was able to elicit the fact that the victim had her cell phone with her throughout the time she spent with Petitioner.  Based on the victim and Mr. Giles' testimony, the victim never attempted to call the police even though she possessed a cell phone.  Mr. Giles called the police.

Even assuming the victim talked on the phone during the ride in Petitioner's vehicle, the overwhelming evidence produced by the state demonstrated that the sexual encounter was not consensual. Mr. Giles testified he found the victim walking and crying hysterically. The victim actively bled while at the hospital. Upon examination, she exhibited vaginal tears, consistent with being penetrated without lubrication. The DNA from the vaginal swab matched the DNA profile of Petitioner. The victim described Petitioner to the police resulting in a very accurate sketch bulletin, she identified Petitioner in a photo spread prior to trial, and she identified Petitioner as her assailant at trial.

In the state's response, the state argued Petitioner's claim of ineffective assistance of counsel should be denied because Petitioner failed to demonstrate legal deficiency, or prejudice to himself, in his attorney's failure to obtain the victim's cell phone records because there was overwhelming evidence of guilt and the victim's testimony was corroborated by both the physical evidence and the testimony of others. Ex. M at 60. The adopted response supported the trial court's decision that Petitioner was not entitled to post conviction relief. Id. at 155. The 1st DCA affirmed. Ex. P at 1.

The state court's decision is entitled to AEDPA deference. The record shows defense counsel prepared for trial. See Petitioner's Exhibit G. Counsel set depositions for the witnesses listed on the state's discovery. Id. Defense counsel deposed the

victim and the detectives.  Defense counsel sent an investigator to Petitioner to show him his interview with the detectives.  The DNA results were obtained.

The defense developed its defense strategy, and this strategy is evidenced by the trial record.  Defense counsel presented the theory of the case to the jury in opening statement.  Ex. B at 33-35.  Petitioner took the stand and testified, offering his explanation for the presence of his DNA in the victim's vaginal swab.  In closing argument, defense counsel made argument supporting the theory of the defense.  <u>Id</u>. at 218-19.  The trial strategy did not amount to deficient performance.

Failure to obtain cell phone records did not render counsel's performance below reasonably competent assistance.  The victim admitted on the stand she had her cell phone during the incident and she never called the police.  Moreover, Petitioner has failed to satisfy the prejudice prong of <u>Strickland</u> as there is no reasonable probability that, but for this alleged deficiency of counsel, the result of the proceeding would have been any different.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  As such, Issue Four is due to be denied.

### E.  Ground Two

In ground two of the Petition, Petitioner claims his constitutional right to be present and to a fair trial were violated when the trial court overruled the defense's objection concerning an improper comment on Petitioner's right to be present at trial.  Petition at 11.  Respondents submit that the 1st DCA's written opinion affirming Petitioner's conviction is consistent with established Supreme Court precedent and Petitioner is not entitled to habeas relief.  Response at 22.

The record demonstrates Petitioner took the stand at trial. On cross examination, the following exchange took place:

> Q    You've had the opportunity to sit through each witness' [sic] testimony, correct?
>
> A    (Through interpreter.)  We talking about this moment?
>
> Q    Yes.  Today.
>
> A    (Through interpreter.)  Yes, sir.
>
> Q    You heard what they said?
>
> A    (Through interpreter.)  Yes, sir.
>
> Q    And you've had an opportunity after hearing what they say to testify yourself?

A     (Through interpreter.) Yes, sir.

**Q     You would agree that that has given you an advantage over the other witnesses, wouldn't you?**

**A     (Through interpreter.)     I don't understand what do you mean an advantage?  Can you explain?**

**Q     Sure.**

> MR. BOWERS [defense counsel]: Your Honor, if I could object.
>
> THE COURT: What is the legal basis for the objection?
>
> MR. BOWERS: Your Honor, Mr. Mendoza has a constitutional -- constitutional right to be present at his own trial.
>
> THE COURT: Of course he does.
>
> MR. BOWERS: In turn, it's being shown by the state that this shows some unfair, improper advantage on his behalf.
>
> THE COURT: It's not unfair or improper.  Whether it's an advantage is to be seen.  You can ask your question.  Overruled.
>
> MR. BOWERS: Yes, sir.

Ex. B at 187-88 (emphasis added).

The state continued its cross examination:

> Q     I'll clarify.  You've -- **none of the other witnesses have been able to hear the other witnesses testify correct?**
>
> **A     (Through interpreter.)  Correct.**

<u>Id</u>. at 188 (emphasis added).

On direct appeal, Petitioner raised the following claim: the trial court erred in overruling defense counsel's objections to the state's improper comment on appellant's constitutional right to be present at his own trial. Ex. E at i. Petitioner relied on the Sixth Amendment of the United States Constitution, contending he has a right to be present at all critical stage of his trial. <u>Id</u>. at 16-17. He argued the right is commensurate to and equally important as the right to remain silent, and the prosecutor violated this right by making improper comments on Petitioner's right to be present at trial. <u>Id</u>. at 17. Petitioner complained that the prosecutor impugned this constitutional right by questioning and commenting on Petitioner's right to be present and hear the witnesses. <u>Id</u>. at 18. Finally, Petitioner argued the prosecutor's questions deprived Petitioner of a fair trial because the question concerning an advantage over other witnesses implied (as defense counsel objected) that Petitioner's exercise of his constitutional right gave him an unfair advantage which the prosecutor was exposing to the jury so the jury would disregard Petitioner's testimony because of this unfair advantage. <u>Id</u>. at 19.

The state filed an answer brief. Ex. F. Petitioner replied. Ex. G. The 1st DCA issued a written opinion affirming the conviction. Ex. H.

This claim has no merit.  Although the court overruled the defense objection, the prosecutor did not re-ask the question as to whether Petitioner had an advantage over the other witnesses. Instead, the prosecutor asked Petitioner to confirm that other witnesses had not been able to hear other witnesses testify. Petitioner stated this was correct.  With that, the prosecutor left that line of questioning.  Of course, the jury could readily observe that Petitioner remained in the courtroom throughout the trial, listening to all of the witnesses' testimony (through the use of an interpreter).  The record shows Petitioner was not pressed to answer the question as to whether he had some sort of advantage over the other witnesses as the question was not re-asked after objection.

In the alternative, the claim is due to be denied.  An explanation follows.  A criminal defendant has a right to be present at trial.  Indeed, "[t]he right of a criminal defendant to be present at all critical stages of his trial is a fundamental constitutional right[.]"  Proffitt v. Wainwright, 685 F.2d 1227, 1260 n. 49 (11th Cir. 1982), cert. denied, 464 U.S. 1003 (1983). In this vein, "[a] criminal defendant's right to be present at trial is based on the Confrontation Clause of Sixth Amendment [and] the Due Process Clause of the Fifth Amendment[.]"  Brown v. United States, 583 F.Supp.2d 1330, 1354 (S.D. Ga. 2008), adhered to on reconsideration by No. 403CR001, 2008 WL 4822542 (S.D. Ga. Nov. 4,

2008), <u>aff'd</u>, 720 F.3d 1316 (11th Cir. 2013) (citing <u>United States</u> <u>v. Novaton</u>, 271 F.3d 968, 997 (11th Cir. 2001)).

The Court assumes for purposes of this opinion that the prosecutor's line of questioning attacked Petitioner's credibility and suggested unfair tailoring of his testimony. Relying on <u>Portuondo v. Agard</u>, 529 U.S. 61 (2000), the 1st DCA found: "[t]he weight of authority both before and after <u>Portuondo</u> favors permitting the prosecutor to question a defendant on cross-examination about possible tailoring of his testimony due to his presence during the testimony of other witnesses." Ex. H at 6-7 (footnotes omitted). This is so because once a defendant takes the stand, his credibility is at issue, and he may be impeached and his testimony assailed like any other witness. <u>Agard</u>, 529 U.S. at 69. Thus, a defendant who takes the stand is subject to truth-seeking rules, without special treatment being accorded. <u>Id</u>.

The preferred means of bringing tailoring to the attention of the jury is through the adversary system where credibility may be assailed on cross examination. <u>Id</u>. at 70. That is exactly what occurred in this case. <u>See</u> <u>Lake v. State</u>, 137 So.3d 450, 452 (Fla. 4th DCA 2014) (finding cross examination concerning tailoring of testimony proper, relying on <u>Mendoza v. State</u>, 93 So.3d 441, 452 (Fla. 1st DCA 2012) and <u>Agard</u>)).

The last state court to decide this claim provided an explanation for its merits-based decision in a reasoned opinion; therefore, this Court must simply review the reasons given by the

- 26 -

state court and defer to those reasons, if they are reasonable. Here, the state court found the trial court did not err in overruling the objection to the prosecutor's questions on cross examination of Petitioner finding these questions designed to challenge the credibility of the defendant as a witness, a proper purpose, and noting the defendant has an opportunity to address the matter during re-direct examination. The 1st DCA did not find a Sixth Amendment violation. This Court must defer to the reasons provided by the state court as they are reasonable.

Petitioner is not entitled to habeas relief on this ground because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Alternatively, Petitioner is not entitled to relief on this claim.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[6] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of March, 2019.

BRIAN J. DAVIS
United States District Judge

sa 2/25
c:
Nabor Mendoza
Counsel of Record

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.